## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Paul Douglas Martin

      v.                                    Case No. 21-cv-416-SE

Acting Commissioner,
Social Security Administration

### Report and Recommendation

Paul Douglas Martin seeks judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Social Security Administration to deny his claim for disability insurance benefits under Title II of the Social Security Act.[1]  In support, Martin contends that that the Administrative Law Judge ("ALJ") erred in assessing his impairments and his residual functional capacity.  The Acting Commissioner moves to affirm, asserting that substantial evidence supports the decision.

### Standard of Review

For purposes of review under § 405(g), the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Sacilowski v. Saul, 959 F.3d 431, 437 (1st Cir. 2020).  The

---

[1] Although Martin cites regulations for claims made under Title XVI, this is a Title II claim only.

court defers to the ALJ's factual findings if they are supported by substantial evidence. Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 1154. The court must affirm the ALJ's findings, even if the record could support a different conclusion, when "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); accord Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).

In making a disability determination, an ALJ follows a five-step process, asking "questions that are sequential and iterative, such that the answer at each step determines whether progression to the next is warranted." Sacilowski, 959 F.3d at 433. The steps are as follows: (Step 1) whether the claimant is currently engaging in substantial gainful activity; if not, (Step 2) whether the claimant has a severe impairment; if so, (Step 3) whether the impairment meets or medically equals an entry in the Listing of Impairments; if not, (Step 4) whether the claimant's residual functional capacity is sufficient to allow her to perform any of her past relevant work; and if not, (Step 5) whether, in light of the claimant's residual functional

capacity, age, education, and work experience, she can make an adjustment to other work available in the national economy.[2] Id. (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v). The claimant bears the burden of showing he is disabled through the first four steps, but at Step 5 the Commissioner must provide evidence to show that there are jobs in the national economy that the claimant can do. Id. at 434.

## Background

Martin has an eighth-grade education and previously worked as a driver, a general farm worker, construction worker, and a stocker in a grocery store. He stopped working in 2014, when he was in his mid-forties, and his last insured date was December 31, 2015. He applied for benefits on the ground that he was disabled because of diabetes, hypertension, paroxysmal atrial fibrillation, peripheral neuropathy, chronic pain, morbid obesity, degenerative disc disease in the lumbosacral spine, difficulty walking, diverticulitis, asthma, obstructive sleep apnea, and depression and anxiety. His application was denied, and Martin requested a hearing before an ALJ.

---

[2] Between Step 3 and Step 4, the court assesses the claimant's residual functional capacity to determine whether he has the capacity to work despite his limitations. 20 C.F.R. § 404.1545(a).

A telephonic hearing was held on February 1, 2017.  An independent medical expert, Dr. Joseph Gaeta, who is a cardiologist, reviewed the record and testified at the hearing. Dr. Gaeta stated that cardiac arrhythmia was Martin's major impairment in 2015.  Dr. Gaeta noted that Martin was morbidly obese and had a history of diabetes but without complications. He said that although neuropathy had been diagnosed, there was nothing in the record to show a significant impairment as a result, no abnormal neurological findings on physical examination, and no EMG test.[3]  The ALJ found that Martin had severe impairments due to cardiac arrhythmia and obesity.

With respect to function, Dr. Gaeta testified that Martin had no limitations on physical activities such as walking, sitting, carrying, lifting, or pulling.  He said that because of his weight, Martin would be limited to only occasionally doing postural activities such as bending and crawling.  He also said that Martin should not climb ladders or scaffolding.

The ALJ found a residual functional capacity based on Dr. Gaeta's opinion.  He found that Martin was not disabled because he could return to his former work as a grocery store clerk. The Appeals Council denied review.

---

[3] EMG stands for electromyography, which is a test used to confirm a diagnosis of neuropathy. https://neurotestinggroup.com/conditions/emg-best-test-to-diagnose-neuropathy/ (last visited April 6, 2022).

Martin sought judicial review in this court.  Martin v. Berryhill, 18-cv-461-JL (D.N.H. May 25, 2018).  There, the court concluded that the ALJ erred in assessing Martin's residual functional capacity by failing to evaluate correctly Martin's statements about his symptoms.  Specifically, after the ALJ determined that the symptoms Martin alleged were not consistent with objective medical evidence, he was required to, but did not, consider other evidence in the record, including Martin's own statements, medical sources, and other sources.  Martin, 18-cv-461, at *11, 2019 DNH 073, May 6, 2019.  The decision was reversed and remanded for further proceedings.

The Appeals Council directed the same ALJ, Thomas Merrill, to reevaluate Martin's statements about his symptoms.  The ALJ held a telephonic hearing on October 14, 2020.  Martin was represented by counsel at the hearing and testified.  A vocational expert also testified.  No medical expert reviewed the record or testified.

During the hearing, Martin testified about his impairments and symptoms.  He said that during the relevant time diabetes caused him to have neuropathy and fatigue.[4]  He was so tired that he had difficulty walking to the sink to get a glass of water.

---

[4] In the record, neuropathy is referred to as both diabetic neuropathy and peripheral neuropathy.  Because the parties do not distinguish between those designations, both are used in this decision, following the context of the parties' usage.

Neuropathy caused numbness and tingling in his feet and hands so
that he was unable to walk.  The circulation in his feet was
poor, and he had to elevate his feet at night and several times
during the day.  He had trouble picking things up because of the
numbness in his hands.  He used a cane to walk and had a ramp
built at his house for access to the door.  The neuropathy also
caused severe pain in his hands and feet.  He would sometimes
fall for no reason.

Martin testified that his wife is legally blind.  Through
their insurance, they had access to a car service that would
drive them to medical appointments.  Martin testified that he
had consulted with a dietician to address his obesity and had
been able to lose weight.  Martin also had difficulty breathing
because of COPD.  He was taking medication for high blood
pressure.

The ALJ asked the vocational expert a hypothetical question
based on a residual functional capacity for work without
exertional limitations but with some nonexertional limitations.
The vocational expert testified that based on those criteria,
that worker could return to Martin's former work as a stocker
and that other jobs were also available.

Martin's attorney asked a hypothetical that would limit the
worker to two hours of sitting or standing in a work day, a need
for frequent breaks, and a need to elevate his feet for five

minutes every two hours.  The vocational expert responded that
there would be no jobs available with those limitations.

The ALJ issued his decision on October 30, 2020.  As he had
in his prior decision, the ALJ relied on the opinions provided
by Dr. Gaeta, who testified at the first hearing.  The ALJ found
severe impairments due to cardiac arrhythmia and obesity.  The
ALJ considered other diagnosed impairments, including diabetic
neuropathy, and concluded that those impairments did not more
than minimally affect Martin's functional capacity for work.

The ALJ also found that Martin had the same residual
functional capacity during the covered period as he had
previously found, which was a capacity to perform a full range
of work at all exertional levels with non-exertional limitations
to avoid certain hazards and only occasionally postural
activities.  The ALJ considered the impairments that were found
to be non-severe at Step Two, including diabetic neuropathy and
obesity, for purposes of the residual functional capacity
assessment.  Noting Martin's testimony about severe symptoms and
impairments, the ALJ concluded that Martin's statements did not
support more limitations because there were no medical signs or
laboratory findings that showed a medically determinable
impairment that could reasonably be expected to produce the
symptoms Martin described.

The ALJ found that Martin was not disabled.  When the
Appeals Council denied review, that decision became the final
decision of the Acting Commissioner.

## **Discussion**

In support of his motion to reverse the decision, Martin
argues that the ALJ improperly assessed his symptoms and his
activities of daily living and also improperly assessed his
residual functional capacity.  Martin challenges the ALJ's
evaluation of evidence in the record, including his failure to
address findings of Dr. Marcia Lipski, a state agency physician
who provided a residual functional capacity assessment in April
of 2015, and his determination that Dr. Caloras's opinion was
not retrospective.  The Acting Commissioner moves to affirm on
the grounds that the ALJ properly addressed Martin's statements
about his symptoms and properly assessed his residual functional
capacity.

A claimant's residual functional capacity is "the most [a
claimant] can still do despite [his] limitations."  20 C.F.R.
§ 404.1545(a)(1).  That assessment considers the claimant's
impairments and related symptoms.  Id.  A residual functional
capacity assessment is made based on all of the evidence in the
case record, including all medical and other evidence.  Id.

The ALJ found that Martin had the residual functional capacity to do work at all exertional levels with certain non-exertional limitations.  Martin contends that the residual functional capacity assessment is wrong because the ALJ failed to properly consider medical opinion evidence and failed to properly assess the limiting effects of his symptoms related to peripheral neuropathy.  The Acting Commissioner contends that assessment was correctly done and is supported by substantial evidence.

### A.  Medical Opinions

Much of the dispute in this case involves the weight given to medical opinion evidence in the record.  Because Martin applied for benefits in 2015, before the pertinent regulations were amended, the weighted standard applies.  20 C.F.R. § 404.1527.  Under that framework, an ALJ is required to consider medical opinions along with all other relevant evidence in a claimant's record.  20 C.F.R. § 404.1527(b).  "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  § 404.1527(a)(1).  Medical opinions are

evaluated based upon the nature of the medical source's
relationship with the claimant, the extent to which the source
provides evidence to support the opinion, the extent the opinion
is consistent with other evidence in the record, the
specialization of the medical source, and other factors
including the understanding the source has of the social
security system. § 404.1527(c); see also Brunnell v.
Commissioner of Social Security, 18-cv-569-LM, 2019 WL 4201068,
at *4 (D.N.H. Sept. 5, 2019).


### 1.  Dr. Caloras's Opinion

Martin argues that the ALJ failed to properly consider the
opinion provided by his treating physician, Dr. Daniel Caloras,
on September 18, 2020, about Martin's peripheral neuropathy.
The ALJ gave that opinion no weight because it was provided
almost five years after Martin's last insured date and because,
the ALJ stated, the opinion did not include a date when the
described limitations began.  Martin points out that the opinion
does include a date, contrary to the ALJ's statement.

A retrospective opinion, for purposes of a social security
determination, is one that provides a diagnosis or assesses a
claimant's condition during the covered period, that is, before
the claimant's last insured date. Marcotte v. Callahan, 992 F.
Supp. 485, 491 (D.N.H. 1997).  An ALJ may consider a

retrospective diagnosis or opinion to the extent it substantiates limitations that existed during the covered period and is corroborated by medical evidence generated during that time. Scott v. Saul, 2021 WL 735851, at *9 (D.N.H. Feb. 25, 2021). An ALJ need not accept a retrospective opinion, however, if there are other well-supported reasons to reject it. Devon A. G. v. Saul, 2020 WL 7335027, at *7 (D. Me. Dec. 14, 2020).

Dr. Caloras provided two opinions dated September 18, 2020. The first, titled "Peripheral Neuropathy Medical Source Statement," states that Martin had peripheral neuropathy and agreed that his impairments due to peripheral neuropathy manifested by September 1, 2014.[5] Admin. Rec. at 2931-34. The second opinion is titled "Neuropathy in Lower Extremities Medical Source Statement." That opinion does not indicate when the described limitations began. Nevertheless, because it was signed the same day as the prior opinion, the same onset date might be presumed.

---

[5] The Acting Commissioner argues in support of his motion to affirm that Dr. Caloras's opinion should not be considered a retrospective opinion because Dr. Caloras did not say that the assessed restrictions began on that date. If the ALJ intended to make that distinction, it was not articulated clearly in the decision. Further, taken in context, Dr. Caloras's opinion assessed restrictions due to impairments that he found began in September of 2014. To the extent the ALJ required clarification of Dr. Caloras's opinion, that opportunity was available to him. See 20 C.F.R. §§ 404.1512(b) & 404.1520b(b)(2); Tegan v. Saul, 546 F. Supp. 3d 162, 170 (D.R.I. 2021). Instead, it appears that the ALJ overlooked the date in the opinion.

In those opinions, Dr. Caloras checked boxes and wrote
descriptions that show Martin was diagnosed with peripheral
neuropathy and had severe pain in both hands and feet.  Dr.
Caloras found that Martin could sit, stand, and walk for less
than two hours in a work day and could only sit or stand for a
very limited continuous period.  He would need to change
positions while working and would have to elevate his legs.  He
was not able to lift more than ten pounds, and he could do that
only rarely.  He would likely be absent from work for more than
four days each month.

The ALJ gave Dr. Caloras's opinion no weight because "it
was provided nearly 5 years after the relevant period ended and
it does not indicated [sic] when the limitations began."  Admin.
Rec. 1806.  Based on the record, the ALJ's statement is
incorrect.

Dr. Caloras was Martin's treating physician during the
covered period and continued to be his treating physician
thereafter.  The ALJ failed to give the treating physician's
opinion weight based on a mistake.  That mistake undermines the
evidentiary bases for the ALJ's residual functional capacity
assessment.

2.  Dr. Lipski's Evaluation

Dr. Marcia Lipski, who is a family medicine physician, reviewed Martin's medical records in April of 2015 to provide an evaluation as a state agency non-examining consultant.  State agency medical consultant physicians' opinions must be considered along with other medical opinion evidence. 20 C.F.R. § 404.1527(e); 20 C.F.R. § 404.1413(a)(5).  Further, because of their familiarity with the social security disability programs their opinions are entitled to evidentiary weight and cannot be ignored by an ALJ.  SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996); Scott v. Saul, 2021 WL 735851, at *10 (D. Mass. Feb. 25, 2021).

The records that Dr. Lipski reviewed included Martin's records from Charlestown Family Medicine, where Dr. Caloras practiced and provided primary care to Martin.  Dr. Lipski found that Martin's primary impairment was peripheral neuropathy.  In her residual functional capacity assessment, Dr. Lipski stated that Martin had exertional limitations so that he could lift up to twenty pounds occasionally and ten pounds frequently.  She found that he could stand or walk for a total of two hours in a work day and could sit about six hours.  He could do pushing and pulling only occasionally and had limitations in doing postural activities.

The ALJ did not mention Dr. Lipski's findings or her residual functional capacity assessment.  For that reason, it appears that the ALJ may not have considered all of the medical evidence in the record.

### 3.  Dr. Gaeta's Opinion

Dr. Gaeta testified to his opinions during the first hearing.  He is a cardiologist and focused on Martin's cardiac arrythmia.  The ALJ gave Dr. Gaeta's opinions great weight and adopted Dr. Gaeta's residual functional capacity assessment.

As noted, Dr. Gaeta is a cardiologist, and no information was provided pertaining to his expertise with respect to diabetic peripheral neuropathy.  Dr. Gaeta testified that Martin had a history of diabetes but had no complications.  Although he acknowledged that neuropathy had been diagnosed, Dr. Gaeta found nothing in the record to show a significant impairment as a result of neuropathy.  He testified that the record showed no abnormal neurological findings on physical examination, and no EMG test.

As the ALJ stated in his decision, however, the medical record shows that Martin had abnormal monofilament tests during the covered period.  While the initial monofilament test results in September of 2014 were normal, later testing in 2014 and in

2015 produced abnormal results.  Dr. Gaeta appears to have been
unaware of those tests.

As a result, Dr. Gaeta's opinion is not supported by the
record.  Further, neither Dr. Gaeta nor the ALJ addressed the
marked difference between Dr. Gaeta's opinion and Dr. Lipski's
opinion as to Martin's residual functional capacity.  The court
also notes that Dr. Gaeta did not claim expertise in the medical
specialty related to diabetic peripheral neuropathy.  Therefore,
Dr. Gaeta's opinion does not provide substantial evidence to
support the ALJ's residual functional capacity assessment.


B.  <u>Other Evidence</u>

As provided above, Martin testified during the hearing
about his symptoms that negatively impacted his ability to
function.  Martin contends that the ALJ failed to properly
assess the limitations caused by his symptoms.  The ALJ found
that Martin's reported activities of daily living indicated that
he was more active and capable than his testimony about his
symptoms suggested.

It appears, however, that the ALJ primarily relied on
Martin's reports of daily activities early in the covered period
to discount his symptoms.  Later reports to medical care
providers document increased pain, fewer activities, no driving,
and less waking.  That progression is confirmed by the letter he

submitted from his neighbor who described the decline in Martin's ability to do activities in his yard and at home.

### C. Result

The ALJ's residual functional capacity assessment, which adopted Dr. Gaeta's opinion, is not based on substantial evidence. For that reason, the decision of the Acting Commissioner should be reversed.

### Conclusion

For the foregoing reasons, the undersigned recommends that the claimant's motion to reverse and remand (document no. 18) be granted, and that the Acting Commissioner's motion to affirm (document no. 21) be denied.

The undersigned also recommends that a different ALJ be assigned to this case on remand to permit a fresh look at the record and to consider having an independent medical expert with expertise in peripheral neuropathy review the record.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Only those issues raised in the objection(s) to this Report and Recommendation are subject to review in the district court. See Sch. Union No. 37 v. United Natl Ins. Co.,

617 F.3d 554, 564 (1st Cir. 2010). Any issues not preserved by such objection(s) are precluded on appeal. See id. Failure to file any objections within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

April 8, 2022

cc: Counsel of Record